IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ST. PAUL MERCURY INSURANCE COMPANY,** | * * * * | |
| Plaintiff/Counter-Defendant, | * * | |
| v. | * * | Case No.: RWT 09cv961 |
| **AMERICAN BANK HOLDINGS, INC.,** | * * | |
| Defendant/Counter-Plaintiff, | * * | |
| and | * * | |
| **AMIEL CUETO,** | * * | |
| Defendant. | * * | |
|  | *** | |

## MEMORANDUM OPINION

This case primarily asks whether this Court may exercise personal jurisdiction over a non-resident defendant who enrolled foreign default judgments in Maryland. Concluding that the answer is yes, the Court will, by separate order, deny Defendant Amiel Cueto's Motion To Dismiss for Lack of Personal Jurisdiction [Paper No. 9] and related motions [Paper Nos. 46 & 57].

**I**

On June 11, 2008, Mr. Cueto initiated a lawsuit against Defendant American Bank Holdings, Inc. ("ABHI"), a Delaware corporation with its principal place of business in Maryland, in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois. See Paper No. 1 ("Compl.") ¶¶ 6, 8; see also id. Ex. A ("Cueto Compl."). ABHI did not timely file

an answer or other responsive pleading, see Compl. ¶ 11, and, on July 23, 2008, the Illinois court entered three separate default judgments against ABHI, see id. ¶ 12; id. Ex. B.

On February 12, 2009, Mr. Cueto enrolled the foreign default judgments in various Maryland courts, seeking their enforcement, including the Circuit Court for Montgomery County, Maryland (Case No. 308934V), the Circuit Court for Howard County, Maryland (Case No. 13C09076350), and the Circuit Court for Prince George's County, Maryland (Case No. CAL09-08463). See id. ¶ 3. Shortly thereafter, Maryland courts sent ABHI notices indicating Mr. Cueto had enrolled the default judgments. See Paper No. 51 ("St. Paul Opp'n"), Ex. A.

ABHI notified its insurer, Plaintiff St. Paul Mercury Insurance Company ("St. Paul"), of the default judgments on February 25, 2009, see Compl. ¶ 25; id. Ex. D, and moved to set aside the default judgments in the Illinois Circuit Court the next day, see Paper No. 7 ("ABHI Answer"), Ex. 1. The Illinois Circuit Court denied ABHI's motion to set aside the default judgments, and the matter is currently on appeal before the Illinois Court of Appeals. See St. Paul Opp'n 3 n.2. On August 17, 2009, the Circuit Court for Montgomery County, Maryland vacated the judgments enrolled in that court, holding that the Illinois courts did not have personal jurisdiction over ABHI. See id. Ex. B. On September 14, 2009, Mr. Cueto filed a motion to set aside the order of the Circuit Court for Montgomery County vacating the judgment, see id. Ex. C, which the Court denied on October 21, 2009, see id. Ex. D.

St. Paul denied ABHI's request for coverage with respect to the default judgments and commenced this declaratory judgment action against ABHI and Mr. Cueto on April 15, 2009. See Compl. ¶ 1. In its Complaint, St. Paul alleges that Mr. Cueto is an Illinois resident and that the Court may exercise jurisdiction over him pursuant to Maryland's long-arm statute and the

Due Process Clause of the Fourteenth Amendment. See id. ¶¶ 2–3. Mr. Cueto was personally served with a summons and St. Paul's Complaint in Illinois on May 7, 2009. See Paper No. 8 ("Proof of Service Upon Amiel Cueto"). Mr. Cueto, proceeding pro se, filed a handwritten "special appearance" on May 27, 2009, see Paper No. 9 ("Cueto's Motion To Dismiss"), which the Court determined is effectively a motion to dismiss for lack of personal jurisdiction. See Paper No. 49 ("January 8, 2010 Mem. Op. and Order").

In his Motion To Dismiss, Mr. Cueto contends that he has never made any contract in Maryland, "had nothing to do with the contract for insurance" at issue in this litigation, has not committed a tortious or wrongful act in Maryland, and has not been physically present in the State of Maryland since 1969. In their oppositions, St. Paul and ABHI argue that this Court may exercise personal jurisdiction over Mr. Cueto because he enrolled the Illinois default judgments he obtained against ABHI in Maryland courts. See St. Paul Opp'n at 2; Paper No. 52 ("ABHI Opp'n"), at 6–7. In his Reply, Mr. Cueto argues that his enrollment of the foreign judgments, absent any attempts to enforce them, is an insufficient basis for personal jurisdiction. See Paper No. 57 ("Cueto Reply"), at ¶¶ 11–12.

## II

Where a district court addresses the question of personal jurisdiction on the basis of motion papers and legal memoranda, without an evidentiary hearing, a plaintiff need only make a prima facie showing of "a sufficient jurisdictional basis." See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). When analyzing the question of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

A federal court may exercise personal jurisdiction over a non-resident defendant if (1) the requirements of the forum state's long-arm statute are satisfied and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. See Consulting Eng'rs, 561 F.3d at 277. Maryland has construed its long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause. See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002). Even though the Maryland long-arm statute reaches the outer limits of due process, the Court still must consider the express provisions of the Maryland long-arm statute because it continues to limit the exercise of specific personal jurisdiction to actions arising from any act enumerated in the statute. See Johansson Corp. v. Bowness Constr. Co., 304 F. Supp. 2d 701, 704 (D. Md. 2004).

## A

The Maryland long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) (West 2009). The Maryland Court of Appeals has held that "the acts done within a State which will support in personam jurisdiction as transacting 'any business' are not necessarily limited to acts which are a part of commerce or of transactions for profit, but include acts which constitute a purposeful activity within the State." Novack v. Nat'l Hot Rod Ass'n, 231 A.2d 22, 26 (Md. 1967). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The Maryland courts have not yet addressed the question of whether enrollment of foreign judgments constitutes purposeful availment of state law and satisfies the "[t]ransacts any business" requirement of the state's long-arm statute. Even outside of Maryland, it appears that no court has directly decided the issue under its own long-arm statutes or as a matter of constitutional due process.[1] The statute authorizing the enrollment and enforcement of foreign judgments, the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), is likewise silent on the issue of whether the filing of the foreign judgment confers personal jurisdiction in other proceedings.[2] See Md. Code Ann., Cts. & Jud. Proc. Proc., §§ 11-801–07 (West 2009). Given the lack of precedent and statutory guidance, the Court will treat this issue as one of first impression.

The Court concludes that a non-resident defendant who enrolls foreign default judgments in Maryland pursuant to UEFJA "[t]ransacts . . . business" within the meaning of Maryland's

---

[1] The court which has come closest to deciding the issue is the Court of Appeals of Ohio in Hall v. Tucker, 829 N.E.2d 1259 (2005). In that case, Tucker, a resident of New Jersey, had purchased from Hall, a resident of Ohio, a standardbred brood mare, which had medical problems and gave birth to an undersized foal. 829 N.E.2d at 1264. Tucker filed suit against Hall in the United States District Court of New Jersey to rescind the sale. Id. The New Jersey court referred the dispute to arbitration, and the arbitrator issued an arbitration award to Tucker, which the New Jersey court reduced to judgment. Id. Tucker filed the judgment in the Jackson County (Ohio) Court of Common Pleas, thereby placing a lien upon all of the land and tenements Hall owned in Jackson County. Id. Tucker then filed a complaint to marshal liens against all of Hall's property in Jackson County and thereafter commenced foreclosure proceedings against Hall's farm. Id. Hall subsequently filed a complaint against Tucker in the Jackson County Court of Common Pleas, which Tucker moved to dismiss, alleging that the trial court lacked personal jurisdiction over him. Id. at 1265. The trial court found that Hall had set forth sufficient allegations to establish its jurisdiction, and Tucker appealed. Id. The Court of Appeals of Ohio concluded that Tucker's purchase of the horse in Ohio combined with his use of Jackson County Court of Common Pleas to enforce the New Jersey judgment satisfied the Ohio long-arm statute's transacting business requirement and that exercising jurisdiction over Tucker comported with due process. Id. at 1267, 1269.

[2] Unlike UEFJA, the Maryland Uniform Interstate Family Support Act, which provides for the enforcement of out-of-state child-support orders against obligors who reside in Maryland, specifically addresses the issue of personal jurisdiction. It states: "Participation by a plaintiff in a proceeding before a responding tribunal, whether in person, by private attorney, or through services provided by the support enforcement agency, does not confer personal jurisdiction over the plaintiff in another proceeding." See Md. Code Ann., Fam. Law § 10-326(a) (West 2009).

long-arm statute. It arrives at this conclusion based on the similarities between the purposeful availment of a state's laws and protections when a judgment creditor enrolls a foreign default judgment and when a litigant files a lawsuit. Prior to enactment of UEFJA, a judgment creditor had to file a lawsuit in Maryland to enforce a foreign judgment. See Weiner v. Blue Cross of Md., Inc., 730 F. Supp. 674, 676 (D. Md. 1990). UEFJA streamlined the procedure for enforcing a judgment by eliminating the need to file a complaint, see id. at 677, but a judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under UEFJA. See Md. Code Ann., Cts. & Jud. Proc. Proc., § 11-805(b) (West 2009). A foreign judgment filed pursuant to the procedures of UEFJA is treated as a Maryland judgment, see id. § 11-802(a)(2), and "has the same effect and is subject to the same procedures, defenses, and proceeding for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed," id. §§ 11-802(b). Thus, the initiation and outcome of a proceeding under UEFJA is substantively similar to those of a civil action. Just as civil actions voluntarily initiated by non-residents may constitute purposeful availment of the laws and protections of Maryland, so also should foreign judgment enrollment proceedings. See Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 898 (D. Md. 2008) ("StemCells purposefully availed itself of the privileges and benefits of this forum by voluntarily filing the 2006 Maryland action, which involves the same parties and is related to the same transaction or occurrence as the instant matter.").

Accordingly, the Court finds that Mr. Cueto transacted business and engaged in purposeful activity in Maryland when he enrolled the Illinois default judgments against ABHI in several different courts within Maryland. By enrolling the foreign judgments in Maryland, Mr. Cueto expressly invoked "the benefits and protections of [Maryland's] laws." Hanson, 357 U.S. at 253. Therefore, the Maryland long-arm statute authorizes the exercise of jurisdiction

over Mr. Cueto for matters arising from or relating to the enrollment of the Illinois default judgments in Maryland. Since St. Paul's declaratory judgment action regarding the existence of insurance coverage directly relates to the Illinois default judgments enrolled in Maryland, the state's long arm statute authorizes this Court's exercise of personal jurisdiction over Mr. Cueto.

**B**

"Due process requires that personal jurisdiction over a non-resident defendant only be exercised where the defendant has certain minimum contacts with Maryland, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Young Again Prods., Inc. v. Acord, 307 F. Supp. 2d 713, 715 (D. Md. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In evaluating whether specific jurisdiction over Mr. Cueto comports with due process, the Court must consider (1) the extent to which he has purposefully availed himself of conducting activities in Maryland and thereby has established minimum contacts, (2) whether St. Paul's claim arises out of Mr. Cueto's activities directed at Maryland; and (3) whether the exercise of personal jurisdiction would be "constitutionally reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001). Constitutional reasonableness is measured by considering the burden on Mr. Cueto of litigating in the forum, the interest of Maryland in adjudicating the dispute, St. Paul's interest in obtaining convenient and effective relief, the shared interests of the states in obtaining efficient resolution of disputes, and the interest of the states in furthering substantive social policies. See Consulting Eng'rs, 561 F.3d at 279 (citing Burger King Corp v. Rudzewicz, 471 U.S. 462, 477 (1985)).

The first two due process inquiries have already been answered affirmatively by the analysis under the Maryland long-arm statute. See supra Part II.B. Mr. Cueto has the requisite

minimum contacts with Maryland by virtue of his purposeful availment of its courts to enroll the foreign judgments against ABHI, and those contacts are directly related to the insurance coverage dispute brought by St. Paul.  As for the third inquiry, the Court finds that exercising jurisdiction over Mr. Cueto is constitutionally reasonable.  First, Mr. Cueto does not and cannot reasonably complain that litigating here is unduly burdensome when he enrolled three foreign judgments in the Maryland courts.  Second, Maryland has a great interest in adjudicating a dispute between a Maryland insured and its insurer regarding the existence of coverage under a policy issued in Maryland.  Third, St. Paul has a strong interest in resolving the insurance policy dispute in Maryland because it is the only identifiable forum in which both Mr. Cueto and ABHI have sufficient contacts.  Fourth, the states have an interest in adjudicating claims in a single action against all defendants.  Fifth, the only social policies implicated in this action relate to the relationship between a Maryland insured and its insurer, and the Maryland courts are in the best position to further those social policies.  The "traditional notions of fair play and substantial justice" are therefore not offended by this Court exercising its jurisdiction over Mr. Cueto.  See Int'l Shoe, 236 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

### III

Mr. Cueto also moves the Court to lift the stay and to vacate the injunction entered on December 17, 2009, see Paper No. 45 ("December 17, 2009 Order").  See Cueto Reply 7–8; Paper No. 46 ("Cueto Motion for Other Relief").  In order to a facilitate a speedy resolution in the underlying Illinois action, the Court stayed the proceedings in this case until June 7, 2010, and enjoined the parties from commencing any actions to address the issues raised in St. Paul's complaint or ABHI's counterclaim in any other court.  See December 17, 2009 Order.  In Maryland, the resolution of insurance coverage disputes should await the outcome of the

underlying litigation where the issues in the coverage action are not independent and separable from those asserted in the underlying suit.  See Blue Ridge Ins. Co. v. Puig, 64 F. Supp. 2d 514, 516 (D. Md. 1999).  In this case, the outcome of the Illinois action on appeal will undoubtedly impact the insurance coverage dispute before this Court.  Indeed, if all of the default judgments are vacated, the remaining issue in this case as to whether St. Paul has any duty to indemnify ABHI for its defense costs would not concern Mr. Cueto.  Consequently, both the stay and injunction remain in effect until June 7, 2010, at which time the Court will likely have the benefit of the outcome of the appeal in the underlying Illinois action.

For the foregoing reasons, the Court will, by separate order, deny Defendant Amiel Cueto's Motion To Dismiss for Lack of Personal Jurisdiction [Paper No. 9], deny Defendant Amiel Cueto's Motion for Other Relief [Paper No. 46], and deny Defendant Amiel Cueto's Motion To Lift the Stay [Paper No. 57].


Date:  March 5, 2010                                              /s/
                                                       ROGER W. TITUS
                                              UNITED STATES DISTRICT JUDGE