THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff/Counter-Defendant, | * | |
| | * | |
| vs. | * | Case No:  8:09-cv-00961-RWT |
| | * | |
| AMERICAN BANK HOLDINGS, INC., | * | |
| | * | |
| Defendant/Counter-Plaintiff. | * | |

**PLAINTIFF/COUNTER-DEFENDANT ST. PAUL MERCURY
INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT/COUNTER-
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Thomas J. Judge (Bar No. 12818)
Brent H. Olson (*Pro hac vice*)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, NW
Suite 450
Washington, DC 20036
Tel:    (202) 778-4060
Fax:    (202) 778-4099
tjudge@ljwllp.com
bolson@ljwllp.com

Counsel for Plaintiff/Counter-Defendant
St. Paul Mercury Insurance Company

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 4

        A.      The *Material* Facts Are Undisputed ........................................................ 4

        B.      No Coverage Exists For The Cueto Action Because ABHI Breached
                Its Duty To Defend ..................................................................................... 5

        C.      There Is No Coverage For The Cueto Action Because ABHI Did Not
                Provide Timely Notice To St. Paul ........................................................... 9

        D.      ABHI's Failure To Defend And Timely Report The Cueto Action
                Caused Actual Prejudice To St. Paul As A Matter Of Law ................... 13

                1.      St. Paul's Loss of Its Contractual Rights Is Actual Prejudice ................. 14

                2.      St. Paul Suffered Prejudice in the Cueto Action ...................................... 16

        E.      ABHI's Waiver And Estoppel Claims Fail As A Matter Of Law ........ 19

                1.      ABHI's Waiver and Estoppel Claims Remain Factually Unsupported .... 20

                2.      ABHI's Waiver and Estoppel Claims Are Legally Deficient ................... 23

        F.      ABHI's Bad Faith Claim Fails As A Matter Of Law ........................... 26

III.    CONCLUSION ...................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*All Class Construction, LLC v. Mutual Beneficial Insurance Co.*,
 3 F. Supp. 3d 409 (D. Md. 2014).................................................................... 26, 28, 30

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ............................................................................................ 23

*Baker's Express, LLC, v. Arrowpoint Capital Corp.*,
 No. ELH-10-2508, 2012 WL 43706265 (D. Md. Sept. 20, 2012) ........................... 15

*Brown v. American International Group, Inc.*,
 339 F. Supp. 2d 336 (D. Mass. 2004)..................................................................... 29

*Heil Co. v. Evanston Insurance Co.*,
 No. 1:05-cv-284, 2009 WL 596001 (E.D. Tenn. Mar. 6, 2009)........................... 6, 7, 8

*Hurley v. Columbia Casualty Co.*,
 976 F. Supp. 268 (D. Del. 1997) ........................................................................... 29

*Janjer Enterprises, Inc. v. Executive Risk Indemnity, Inc.*,
 97 F. App'x 410 (4th Cir. 2004)............................................................................. 28

*Maynard v. Westport Insurance Corp.*,
 208 F. Supp. 2d 568 (D. Md. 2002)........................................................................ 21

*Microbix Biosystems, Inc. v. Biowhittaker, Inc.*,
 172 F. Supp. 2d 665 (D. Md. 2000)........................................................................ 19

*Millennium Inorganic Chemicals Ltd. v. National Union Fire Insurance Co.
 of Pittsburgh, Pa.*, 893 F. Supp. 2d 715 (D. Md. 2012), *reversed on other grounds*,
 744 F.3d 279 (4th Cir. 2014) ................................................................................. 27

*Minnesota Lawyers Mutual Insurance Co. v. Baylor & Jackson, PLLC*,
 531 F. App'x 312 (4th Cir. 2013)................................................................... 3, 14, 17

*Minnesota Lawyers Mutual Insurance Co. v. Baylor & Jackson, PLLC*,
 852 F. Supp. 2d 647 (D. Md. 2012)........................................................................ 23

*National Union Fire Insurance Co. of Pittsburgh Pa. v. U.S. Liquids, Inc.*,
 271 F. Supp. 2d 926 (S.D. Tex. 2003).................................................................... 29

*Navigators Specialty Insurance Co. v. Medical Benefits Administrators of Maryland, Inc.*,
No. ELH-12-2076, 2014 WL 768822 (D. Md. Feb. 21, 2014)…………………………...17

*Perini/Tompkins Joint Venture v. Ace American Insurance Co.*,
738 F.3d 95 (4th Cir. 2013) ...................................................................................... 22

*Scottsdale Insurance Co. v. Harris*,
159 F. Supp. 2d 918 (E.D. La. 2001)........................................................................ 12

*Smithfield Business Park, LLC v. SLR International Corp.*,
No. 5:12-cv-282-F, 2014 WL 3738217 (E.D.N.C. Jul. 29, 2014)........................... 19

## State Cases

*Briggs Ave. LLC v. Insurance Corp. of Hannover*,
899 N.E.2d 947 (N.Y. 2008) .......................................................................... 9, 10, 11

*Commercial Union Insurance Co. v. Porter Hayden Co.*,
698 A.2d 1167 (Md. Ct. Spec. App. 1997)............................................................... 12

*Crites v. Photometric Products Corp.*,
169 A. 164 (Del. Ch. 1933) ...................................................................................... 11

*Delatorre v. Safeway Insurance Co.*,
989 N.E.2d 268 (Ill. App. Ct. 2013) ........................................................................... 8

*Plitt v. Kellam*,
160 A.2d 615 (Md. 1960) .......................................................................................... 11

*Prince George's County v. Local Government Insurance Trust*,
879 A.2d 81 (Md. 2005) ....................................................................... 3, 14, 15, 17

*Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.*,
698 A.2d 1078 (Md. 1997) ....................................................................................... 18

*South Carolina Insurance Co. v. Hallmark Enterprises, Inc.*,
364 S.E.2d 678 (N.C. Ct. App. 1988)......................................................................... 9

*Taylor v. Mandel*,
935 A.2d 671 (Md. 2007) .......................................................................................... 22

*Washington v. Federal Kemper Insurance Co.*,
482 A.2d 503 (Md. Ct. Spec. App. 1984).................................................................. 18

*Woodfin Equities Corp. v. Harford Mutual Insurance Co.*,
   678 A.2d 116 (Md. Ct. Spec. App. 1996), *reversed in part on other grounds*,
   687 A.2d 652 (Md. 1997) ................................................................................................ 18

## State Statutes

MD. CODE ANN., CTS. & JUD. PROC. § 3-1701(a)(4) ........................................................ 26, 30, 31

735 ILL. COMP. STAT. 5/2-1005 .................................................................................... 16

735 ILL. COMP. STAT. 5/2-1301(d) .................................................................................. 5

735 ILL. COMP. STAT. 5/2-301 ...................................................................................... 16

I.    **INTRODUCTION**

If nothing else, the opposition brief (ECF No. 117-1) filed by Defendant/Counter-Plaintiff American Bank Holdings, Inc. ("ABHI") establishes that the *material* facts in this case are not in dispute.  ABHI concedes that, on June 18, 2008, its registered agent, CT Corporation ("CT Corp."), was properly served with the Cueto Action complaint and summons.  ABHI also does not dispute that CT Corp. delivered that process to ABHI in accordance with ABHI's instructions, which were erroneous due to ABHI's own failure to update the instructions after the departure of its Chief Financial Officer months before.  ABHI also does not dispute that, after having been properly served, it did not respond at all to the Cueto Action complaint and it did not provide notice to St. Paul for more than seven months, during which time $98.5 million in default judgments (the "Default Judgments") were entered against it in the Cueto Action, which otherwise was a frivolous lawsuit at least as to ABHI.  Then confronted with "bet the company litigation," ABHI undeniably spent in excess of $1.5 million (nearly the entire $2 million limit of liability under the Policy) to prevent enforcement of the Default Judgments and ultimately to vacate them.

These undisputed facts entitle plaintiff/counter-defendant St. Paul Mercury Insurance Company ("St. Paul") to judgment as a matter of law.  ABHI's failure to file any response whatsoever in the Cueto Action for more than seven months, permitting the entry of the Default Judgments, was a breach of ABHI's duty to defend under the Policy.  ABHI attempts to spin this as merely a matter of not having defended the Cueto Action "quickly enough for St. Paul's liking."  (ABHI Opp. at 35).  But, the undisputed fact is that ABHI did not file a response to the Cueto Action anywhere close to the time provided for under the applicable rules of procedure to

prevent entry of a default judgment.  Under any standard, the utter failure to respond in any manner – permitting entry of a default judgment – is a breach of the duty to defend.

Moreover, ABHI's inaction undeniably included failing to provide notice, as expressly required by the Policy, "as soon as practicable" but in no event later than sixty (60) days after the expiration of the Policy Year in which the Cueto Action was first made (i.e., November 29, 2008).  The relevant case law logically holds that an insured's own failure to maintain proper delivery instructions for civil process does not make timely notice to the insurer "impracticable." Rather, in such circumstances, the insured's late notice to the insurer is deemed as a matter of law to be not as soon as practicable.  Consistent with that case law, it was eminently practicable for ABHI to keep its delivery instructions to CT Corp. up to date and its failure to properly handle the Cueto Action complaint due to its outdated delivery instructions cannot excuse ABHI's seven month delay in providing notice to St. Paul.  Furthermore, it is beyond dispute that ABHI did not provide notice to St. Paul before November 29, 2008, 60 days after the end of the Policy Year.

Although proof of prejudice is not required in these circumstances, the undisputed facts establish actual prejudice to St. Paul as a matter of law.  As an undeniable result of ABHI's seven months of inaction St. Paul lost its contractual right to associate in the defense, definitively losing the opportunity to prevent the entry of the Default Judgments in the first place and also the opportunity to seek an early dismissal of the otherwise frivolous Cueto Action without having to address ABHI's lack of diligence in responding to that lawsuit.  Contrary to ABHI's arguments (ABHI Opp. at 27-31), the loss of these contractual rights and opportunities constitutes actual prejudice as a matter of law, as held by both the Maryland Court of Appeals and the Fourth

Circuit.  *See Prince George's Cnty. v. Local Gov't Ins. Trust*, 879 A.2d 81, 100 (Md. 2005); *Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC*, 531 F. App'x 312, 320 (4th Cir. 2013).  Also, because of the $98.5 million in Default Judgments ABHI retained the highest priced attorneys to vacate the Judgments and respond to Cueto's arguments that ABHI had waived all of its defenses due to its lack of diligence in responding to the Cueto Action complaint.  In addition, ABHI had to incur substantial defense costs in preventing enforcement of the Default Judgments – costs that would not have been incurred but for the Default Judgments.

ABHI's opposition adds nothing to support its argument that St. Paul should be barred by waiver and estoppel from denying coverage because a St. Paul claims counsel allegedly promised – the very day after receiving the claim and while still learning about the underlying action from ABHI – that coverage existed.  The Court previously telegraphed its strong doubts about ABHI's waiver and estoppel arguments, and these arguments have not improved with age. ABHI's waiver and estoppel defenses continue to fail for the reasons set forth in St. Paul's opening brief.

Finally, with respect to its bad faith counterclaim, ABHI does not dispute that in the absence of coverage there can be no bad faith.  Moreover, assuming arguendo that there was coverage, the undisputed facts cannot support a finding of bad faith because St. Paul's claim handling was prompt, thorough, and consistent with the case law:  St. Paul reviewed the relevant pleadings, reached a decision supported by the applicable legal authority, and informed ABHI of that decision in a well-reasoned and clear coverage letter within 50 days of first receiving notice.

II.    **ARGUMENT**

A.    **The *Material* Facts Are Undisputed**

Despite its attempts to obscure and minimize their import, ABHI does not dispute any of

the material facts that mandate summary judgment in St. Paul's favor:

- Pursuant to the Policy's definition of a "Claim," the Claim for the Cueto Action existed as of June 18, 2008, when the Cueto Action complaint and summons were served on CT Corp., ABHI's registered agent for service of process.   (Ex. 1, Policy, General Terms, Conditions and Limitations ("GTC&L"), Definitions, Claim; Ex. 3, Aff. of B. Hickman ("Hickman Aff.") ¶¶ 6, 19).[1]

- Despite the fact that ABHI's CFO John Wright had left ABHI months before, ABHI's instructions to CT Corp. required that all ABHI process served on CT Corp. be delivered to Wright at the ABHI/American Bank office in Greenbelt (the "Greenbelt Office").  (Ex. 2, Plack Dep. 108:12-14; Ex. 3, Hickman Aff. ¶¶ 8-9).

- CT Corp. followed ABHI's instructions and had the Cueto Action complaint and summons addressed to Wright and delivered to the Greenbelt Office on June 19, 2008.  (Ex. 5, CT-ABH 00001; Ex. 6, Wallace Dep. 29:15-19).

- Under the Policy, ABHI had the duty to defend the Cueto Action.   (Ex. 1, Policy, Declarations, Duty to Defend).

- The Policy also required ABHI to give St. Paul notice of the Cueto Action as soon as practicable, but in no event later than sixty (60) days after the expiration of the Policy Year in which the Claim was first made (i.e., November 29, 2008).   (*Id.*, GTC&L, Defense and Settlement, Duty of the Insureds to Defend).

- Despite possessing the duty to defend all claims against it and obligation to give notice to St. Paul as soon as practicable, ABHI neither entered any defense in the Cueto Action nor provided any notice to St. Paul until

---

[1]  Unless otherwise specified, all references to "Ex. __" refer to exhibits 1 through 40 to the October 29, 2014 Declaration of Brent Olson in support of St. Paul Mercury Insurance Company's Motion for Summary Judgment (ECF No. 111-3) or, if numbered 41 or higher, to the December 30, 2014 Declaration of Brent Olson accompanying this brief ("Olson Reply Decl."). All references to "ABHI Opp. Ex. __" are to the exhibits accompanying ABHI's Opposition (ECF No. 117-1) ("ABHI Opp.").

February 25, 2009.  (Ex. 17, Feb. 25, 2009 Notice; Ex. 18, Petition to Void and Vacate).

- ABHI's inaction allowed Cueto to obtain $98.5 million in default judgments against ABHI in July 2008, more than six months before ABHI first entered a defense in the Cueto Action or provided notice to St. Paul.  (Ex. 7, Default Judgments).

- Cueto commenced actions to enforce the Default Judgments against ABHI in Maryland, North Carolina, Washington, D.C., and Ohio.  (Exs. 12, 13, 14, 15).

- ABHI retained multiple law firms and ultimately incurred more than $1.5 million (almost the entire Policy limit) seeking to prevent enforcement of, and vacate, the $98.5 million in default judgments entered in an otherwise frivolous case.  (Ex. 16, Bolog Dep. 186:18-187:20).

**B.    No Coverage Exists For The Cueto Action Because ABHI Breached Its Duty To Defend**

ABHI admits, as it must, that it had the duty to defend the Cueto Action, but it neither retained defense counsel nor entered a defense in the Cueto Action until February 2009 – by which time more than $98.5 million in default judgments had been entered against it.  This leaves ABHI with only the untenable argument that its utter failure to respond to the Cueto Action for more than seven months should not be considered a breach of its duty to defend.  ABHI's argument is facially implausible, and examination only further exposes its flaws.

ABHI attempts to dismiss St. Paul's duty to defend claim by asserting that it is a mere issue of not acting "promptly enough" for St. Paul's "liking."  (ABHI Opp. at 34).  But this is not about St. Paul's likings or subjective views, and ABHI cannot reasonably characterize its response to the Cueto Action as anything vaguely approaching "prompt."   ABHI, like every litigant, had an obligation to file a response to a properly served complaint in the time provided by the applicable rules of procedure.   Failure to do so subjects a party to significant consequences such as default judgments.  *See, e.g.,* 735 ILL. COMP. STAT. 5/2-1301(d).  ABHI

undeniably did not comply with the applicable rules when it did not respond at all to the Cueto Action complaint for seven months.  This failure to comply with the most basic of litigation requirements (i.e., to file a timely response to prevent a default judgment) is a fundamental breach of the duty to defend.  *E.g., Heil Co. v. Evanston Ins. Co.*, No. 1:05-cv-284, 2009 WL 596001, at *4 (E.D. Tenn. Mar. 6, 2009) (insured breached its duty to defend by not answering complaint or otherwise responding until after entry of default judgment).

Yet ABHI makes the incredible assertion that if St. Paul had wanted ABHI to *competently and timely* defend claims against it, St. Paul had to expressly say that in the Policy:

> If St. Paul wished to include in the "Duty of the Insureds to Defend" provision a requirement that the insured must respond to service of a claim within a certain time period, or a provision stating that allowing entry of a default judgment destroys coverage, it could certainly have done so.  But the Policy contains no such language or any other language informing the policyholder that St. Paul has the right to deny coverage if it concludes a defense of an otherwise covered claim was not instituted quickly enough for St. Paul's liking.[2]

(ABHI Opp. at 34-35).   ABHI essentially argues – with a straight face – that its failure to respond to the Cueto Action complaint for more than seven months should be excused because the Policy failed to spell out that ABHI should defend claims competently and in compliance with deadlines set by applicable rules of procedure.  The Policy clearly states that "it shall be the duty of the Insureds . . . to select defense counsel and defend any Claim."  (Ex. 1, Policy, GTC&L, Defense and Settlement, Duty of the Insureds to Defend).  If nothing else, the duty to defend necessarily includes the most basic obligation to file a timely response to a complaint to prevent entry of a default judgment.

---

[2]  Again, ABHI disingenuously suggests that St. Paul is complaining about a violation of St. Paul's own litigation standards.  (ABHI Opp. at 35 ("a defense . . . was not instituted quickly enough for St. Paul's liking")).  That obviously is not the case.  The violation is of litigation deadlines set by the State of Illinois.

As the court found in *Heil*, 2009 WL 596001, at *4, an insured breaches its duty to defend when it fails to interpose a defense until after the entry of a default judgment against it. ABHI's lengthy attempts to distinguish *Heil* all fail.[3]  Like here, the insured in *Heil* failed to timely answer a complaint, resulting in entry of a default judgment.  *Id*.  The court relied on the failure to answer and subsequent default judgment to find the insured had breached its duty to defend.  *Id*. ("The failure to answer a complaint, respond to discovery requests, and entry of default judgment fall short of the obligation to provide a 'proper defense.'").  If anything, the minimal distinctions between this matter and *Heil* show how clear ABHI's breach is in this case. The insured in *Heil* at least timely hired an attorney who then failed to actually represent it.  *Id*. at *1.  In contrast, ABHI did not even select defense counsel, let alone retain one who entered an appearance in the Cueto Action.

ABHI also seeks to distinguish *Heil* on the grounds that the policy there referred to a "proper defense," while ABHI's Policy does not "require" the defense to be "proper."  (ABHI Opp. at 33).  However, the *Heil* Court found that a "proper defense" merely meant the insured's defense must be reasonable.  *Heil*, 2009 WL 596001, at *4.  Here, St. Paul does not ask the Court to determine whether ABHI's defense of the Cueto Action was reasonable as this case does not present a debate over whether a litigation strategy employed by ABHI was reasonable or not. Rather, the question is whether ABHI's failure to do anything at all in the litigation for seven months, while $98.5 million in default judgments were entered, was a breach of ABHI's basic

---

[3] ABHI emphasizes that the *Heil* insured's brief was untimely (ABHI Opp. at 33), but fails to note that the *Heil* court expressly stated that it had "read and is familiar with the contents of the [insured's] response."  *Heil*, 2009 WL 596001, at *1 n.2.

duty to defend the claim.  The point is simple:  Not defending at all is – by any standard – a breach of the duty to defend.

ABHI also attempts to distinguish *Delatorre v. Safeway Insurance Co.*, 989 N.E.2d 268, 274-75 (Ill. App. Ct. 2013), asserting that there it was the insurer (not the insured) who possessed the duty to defend and breached it by allowing the entry of default judgments.  *Id.*  However, ABHI makes no attempt to explain why insurers and insureds should be held to different standards when the purpose of the duty to defend is the same in both cases.  The court in *Delatorre* found the insurer had breached its duty to defend because its inaction allowed default judgments to be entered against the insured.  *Id.*  There is no logical basis for treating ABHI's inaction here any differently.

ABHI does not dispute that, with respect to its breach of its duty to defend, St. Paul does not need to show any actual prejudice.[4]  Accordingly, based on the undisputed material facts, St. Paul is entitled to summary judgment and a declaration that there is no coverage for the Cueto Action because ABHI breached its duty to defend.[5]

---

[4] As a matter of law, a breach of the duty to defend does not require a showing of prejudice.  *See Heil*, 2009 WL 596001, at *3 (holding Tennessee's prejudice requirement for late notice was inapplicable to a denial based on an insured's breach of its duty to defend); *see also* Md. Ins. Code § 19-110 (requiring showing of actual prejudice only when denial is based on lack of cooperation or late notice).  In any event, as shown in St. Paul's opening brief and confirmed below, ABHI's breach of its duty to defend did cause actual prejudice to St. Paul.  (ECF No. 111-1, St. Paul Mot. Summ. Judg. Br. ("St. Paul MSJ Br.") at 21-27.)

[5] ABHI asserts several "facts" that it claims illustrate the weakness of St. Paul's duty to defend argument.  (ABHI Opp. at 31-32).  But ABHI's "facts" are merely a repackaging of its argument that St. Paul's assertion of a breach of the duty to defend was untimely.  The Court previously rejected ABHI's argument when it granted St. Paul leave to amend, noting that St. Paul had made ABHI aware of the duty to defend issue by September 17, 2009.  (ECF No. 97, Order Granting Leave to Amend Compl. at 3).

**C.     There Is No Coverage For The Cueto Action Because ABHI Did Not Provide Timely Notice To St. Paul**

ABHI raises several ineffectual arguments why its late notice should not bar coverage under the Policy's notice provision.  Each argument is demonstrably faulty and provides no basis for denying St. Paul summary judgment.

As an initial matter, ABHI misrepresents to the Court that "St. Paul has not taken the position" that ABHI violated the Policy's requirement that notice be given "as soon as practicable."  (ABHI Opp. at 26 n.14).  To the contrary, St. Paul has consistently asserted that ABHI's notice violated the Policy's "as soon as practicable" requirement.  (*See, e.g.,* Ex. 41, St. Paul Resps. to Interrogatories, No. 8 ("[T]here is no coverage for the Cueto claim because it . . . *was not reported as soon as practicable*.") (emphasis added)); (St. Paul MSJ Br. at 23 ("*Had St. Paul been provided with notice as soon as practicable*, it could have ensured that defense counsel was properly retained and timely filed an appropriate motion to dismiss for lack of personal jurisdiction, noting that ABHI conducted absolutely no business in Illinois and had no involvement in the underlying real estate transaction in Illinois.") (emphasis added)).

ABHI's notice to St. Paul clearly was not "as soon as practicable." As multiple courts have held, when an insured fails to keep contact information necessary for service of process up to date, the insured's belated notice is not "as soon as practicable."  *See Briggs Ave. LLC v. Ins. Corp. of Hannover*, 899 N.E.2d 947, 948 (N.Y. 2008) (finding as a matter of law that the insured failed to satisfy policy's as soon as practicable requirement where the insured did not receive a complaint because it had failed to keep its address up to date with its designated agent); *South Carolina Ins. Co. v. Hallmark Enters., Inc.*, 364 S.E.2d 678, 681 (N.C. Ct. App. 1988) (finding

as a matter of law insured failed to satisfy policy's as soon as practicable notice requirement "because [the insured] failed to properly maintain an agent and address for service of process").

In *Briggs*, the insured ("Briggs") designated the secretary of state as its agent for service of process.  899 N.E.2d at 948.  Briggs subsequently moved but failed to notify the secretary of its new address.  *Id.*  Consequently, when Briggs was sued, Briggs "did not receive the summons and complaint and did not know that the lawsuit existed" or provide notice to its insurer until after a subsequent motion for default judgment was served directly on Briggs.  *Id.*

Like here, the *Briggs* policy's provisions contained a requirement that notice be given "as soon as practicable" once a claim was made.  *Id.*  Affirming the insurer's denial of coverage, the *Briggs* court found that Briggs did not provide notice as soon as practicable because "[i]t was unquestionably practicable for Briggs to keep its address current with the Secretary of State, and thus assure that it would receive, and be able to give, timely notice of the lawsuit."  *Id.*  Likewise here, it was "unquestionably practicable" for ABHI to provide CT Corp. with updated delivery instructions once Wright left ABHI, but ABHI failed to do so.  Accordingly, ABHI undeniably violated the Policy's notice provision's "as soon as practicable" requirement.[6]

ABHI also errs in asserting that its obligation to give notice was not triggered by the June 18, 2008 service of the Cueto Action's complaint on CT Corp.  ABHI contends it was not required to give notice until ABHI possessed "actual knowledge" of the Cueto Action in February 2009.  (ABHI Opp. at 17-19).  This is simply wrong.  Though irrelevant for the reasons shown below, ABHI had "actual knowledge" of the Cueto Action since the June 18, 2008 service

---

[6] ABHI also asserts that its late notice should be excused because the delay in providing notice was "reasonable."  (ABHI Opp. at 19-20).  However, ABHI's delay was not "reasonable" for the same reasons that its notice was not as soon as practicable.

on CT Corp.  Maryland law is clear that the knowledge an agent "acquire[s] in the course of the agency" is imputed to and considered the "actual knowledge" of the principal.  *Plitt v. Kellam*, 160 A.2d 615, 619 n.4 (Md. 1960) ("The knowledge imputed to the principal is considered actual knowledge."); *see also Crites v. Photometric Prods. Corp.*, 169 A. 164, 168 (Del. Ch. 1933) ("service of process upon the agent selected by the corporation to act for it for that purpose must be taken as conveying notice to it of the [institution] of the suit.").  Thus, ABHI had actual knowledge of the Cueto Action once CT Corp. received the Cueto Action complaint.

ABHI next erroneously asserts that the notice provision is unclear because it fails to "identify the event that triggers the insured's notice obligation in a circumstance where the insureds lack knowledge of the claim."  (ABHI Opp. at 19).  However, the Policy's notice provision is unambiguously triggered by the existence of a Claim: "[t]he Insureds shall . . . give to the Insurer written notice *of any Claim made* against the Insureds as soon as practicable . . . ." (Ex. 1, Policy, GTC&L, Notice) (emphasis added).  ABHI does not dispute that the Cueto Action Claim was made against ABHI upon the June 18, 2008 service of the complaint on CT Corp. (*Id.*, GTC&L, Definitions, Claim (defining a Claim as "a civil proceeding against any Insured *commenced by the service of a complaint* or similar process") (emphasis added)).  Accordingly, ABHI cannot dispute that its obligation to provide notice ran from service of the complaint on June 18, 2008, regardless of ABHI's purported lack of knowledge.  *See, e.g., Briggs*, 899 N.E.2d at 381 (finding provision requiring notice as soon as practicable "if a claim is made or 'suit' is brought against any insured" was triggered by service of a lawsuit on insured's agent even though insured purportedly did not know about lawsuit).

- 11 -

This ABHI Policy language distinguishes *Scottsdale Insurance Co. v. Harris*, 159 F. Supp. 2d 918 (E.D. La. 2001).  (*See* ABHI Opp. at 18).  There, the insurer argued that the insured failed to provide timely notice when the insured was served with a complaint that the insured failed to read because the named defendant was a different entity with a similar name. *Scottsdale*, 159 F. Supp. 2d at 919.  The insurer expressly relied upon a policy provision that required notice to be provided upon the insured's *receipt* of a "summons or other process."  *Id.* at 920.  However, the policy that the insurer attached to its motion did not actually contain this provision.  *Id.*  The *Scottsdale* court's ruling thus hinged on this evidentiary issue – recognizing it was "without the full language of the policy," the court declined to enforce the missing provision that required notice upon receipt.  *Id.*  In contrast, the notice provision before the Court here undeniably requires notice upon the existence of a Claim (i.e., "service of a complaint"). Moreover, the Cueto Action complaint and summons specifically identified ABHI and ABHI's registered agent for the acceptance of process was aware of that fact – as evidenced by it sending the process to ABHI – meaning ABHI had actual knowledge of this as well.[7]

ABHI also attempts to circumvent the notice provision's unambiguous requirements by asserting that the provision is inconsistent with the Policy's other provisions.  Specifically, ABHI contends that there is an inconsistency between the bold print "CLAIMS MADE" language's reference to claims "made during the Policy Period" and the notice provision's use of the defined

---

[7] *Commercial Union Insurance Co. v. Porter Hayden Co.*, 698 A.2d 1167 (Md. Ct. Spec. App. 1997), is inapposite because it addressed when – under different policy language – the insured was required to report an occurrence, not a claim.  *Id.* at 660-661 (finding that with occurrences the "insured's notice obligation accrues when circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim").

term "Policy Year."[8]  (ABHI Opp. at 19).  There is no inconsistency.  The Policy requires the

Claim to be made during the Policy Period.  (Ex. 1, Policy, Bankers Prof'l Liab. Insurance

("BPLI") Coverage).  The notice provision unambiguously ties notice, in part, to the Policy Year

in which the Claim is first made, which is not surprising since the Policy provides separate limits

of liability for each "Policy Year."  (*Id.*, GTC&L, Notice).  No "inconsistency" exists because

these provisions do not interfere with each other, and therefore the Court can and must apply

each as written.

Because ABHI violated both the "as soon as practicable" requirement and within sixty

days of the end of the Policy Year requirement, the court should grant St. Paul summary

judgment based on ABHI's undeniable violation of the Policy's notice provision.

> **D.** **ABHI's Failure To Defend And Timely Report The Cueto Action Caused Actual Prejudice To St. Paul As A Matter Of Law**

ABHI's entire theory that there is no actual prejudice is premised on its flawed assertion

that St. Paul may rely only on prejudice that resulted after November 29, 2008, the notice

deadline imposed by the notice provision's second prong (i.e., within 60 day of expiration of the

Policy Year).  However, this argument erroneously assumes that St. Paul does not contend that

ABHI's notice was not "as soon as practicable."  As set forth above, ABHI is wrong – St. Paul

has asserted that ABHI failed to provide notice as soon as practicable.  *Supra* 9.  It was entirely

practicable  for  ABHI  to  provide  notice  before  the  Default  Judgments  were  entered.

---

[8] ABHI erroneously contends that the "'Policy Year' concept" is "found only in the non-bold-print notice provision."  (ABHI Opp. at 19).  The defined term "Policy Year" appears in the Policy more than 40 times, including in the Policy's declarations concerning limits of liability and in provisions concerning the Automatic Discovery Period, Additional Extended Discovery Period, limits of liability, notice of circumstances, defense and settlement, and acquisition of the Parent Company.  (Ex. 1, Policy).

Consequently, all prejudice that resulted from ABHI's failure to notify St. Paul is relevant here –

including the prejudice that accrued before November 29, 2008.

**1.      St. Paul's Loss of Its Contractual Rights Is Actual Prejudice**

ABHI relegates its response to St. Paul's undisputed loss of its contractual rights to a

footnote, apparently recognizing that it has no meaningful response.  (ABHI Opp. at 30 n.16).

Though ABHI possesses the duty to defend under the Policy, the Policy also provides that

St. Paul has "the right and shall be given the opportunity to effectively associate with, and shall

be consulted in advance . . .  regarding . . . the selection of appropriate defense counsel . . . and

substantive defense strategies."  (Ex. 1, Policy, GTC&L, Defense and Settlement, Duty of the

Insureds to Defend).  ABHI does not and cannot dispute that its failure to provide notice before

entry of the Default Judgments prevented St. Paul from exercising its participation rights at a

time when doing so would have prevented the Default Judgments.

ABHI asserts that St. Paul's loss of these rights is inconsequential because "the Policy

allocates the defense duty to ABHI, not St. Paul."  (ABHI Opp. at 30 n.16).  But both the Court

of Appeals of Maryland and the United States Court of Appeals for the Fourth Circuit have

rejected this argument and instead held that "*the right to participate had value to the* [*insurer*]."

*Prince George's Cnty. v. Local Gov't Ins. Trust*, 879 A.2d 81, 100 (Md. 2005) ("*LGIT*")

(emphasis added) (holding insurer "suffered prejudice when the [insured] precluded the [insurer]

from exercising any of its rights" by failing to provide timely notice to its insurer); *see also*

*Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC*, 531 F. App'x 312, 320 (4th Cir.

2013) (finding insurer suffered actual prejudice where its insured's failure to provide timely

notice hindered the insurer's ability to conduct pre-suit investigation and help ameliorate the malpractice in the underlying action).

ABHI next asserts that "an insurer's speculation about what it could have done in exercising its contractual rights does not suffice to prove actual prejudice under Maryland law." (ABHI Opp. at 30 n.16).  Again, both *LGIT* and *Minnesota Lawyers* rejected this argument and held that when the insured places its insurer in the untenable position of losing its contractual rights before having the opportunity to exercise them, the insurer need only prove that its contractual rights to participate were violated.  *E.g., LGIT*, 879 A.2d at 100 ("The [insured], however, put the [insurer] in the position of proving a negative and speculating about what could have been.  The [insurer] need not speculate.").  ABHI makes no attempt to distinguish these decisions, nor could it.  Moreover, the sole case ABHI relies on is inapposite because it did not involve an insurer's loss of its specific contractual rights to participate due to a lack of timely notice, but rather a general argument that the insurer's earlier involvement might have led to greater efficiencies and lower defense costs.  *Baker's Express, LLC, v. Arrowpoint Capital Corp.*, No. ELH-10-2508, 2012 WL 43706265, at *25 (D. Md. Sept. 20, 2012).  In any event, no speculation is required here because it is beyond dispute that had St. Paul received notice as soon as practicable it would not have sat idly by and tolerated ABHI's complete failure to defend.

Notably, ABHI's opposition does not even attempt to refute that "St. Paul's situation is . . . on all fours with *LGIT* and *Minnesota Lawyers*."  (St. Paul MSJ Br. at 23).  St. Paul lost the opportunity to timely exercise its contractual rights to participate in defending the underlying action due to ABHI's failure to provide notice as soon as practicable.  Accordingly, just as in

*LGIT* and *Minnesota Lawyers*, St. Paul's loss of its contractual rights constitutes actual prejudice and St. Paul is entitled to summary judgment.

### 2.    St. Paul Suffered Prejudice in the Cueto Action

ABHI attempts to dismiss St. Paul's evidence of prejudice in the Cueto Action by labeling such evidence as "pure conjecture" and "speculation."  But the undisputed facts establish that ABHI's inaction caused undeniable adverse consequences and the loss of concrete opportunities.

Specifically, it is undisputed that the applicable rules of procedure gave ABHI an opportunity to file an initial dispositive motion to dismiss for lack of personal jurisdiction.  *See* 735 ILL. COMP. STAT. 5/2-301.  It is undisputed that those same rules gave ABHI an opportunity to file an early motion for summary judgment on the grounds ABHI had absolutely no involvement in the underlying real estate transaction.  *See* 735 ILL. COMP. STAT. 5/2-1005.  It is undisputed that both these defenses – personal jurisdiction and non-involvement in the underlying transaction – were entirely meritorious.  And it is undisputed that ABHI's inaction cost it the opportunity to file these motions.  (Ex. 18, Petition to Void and Vacate).  Instead, ABHI was forced to advance these defenses in an omnibus petition to vacate the default judgments that required ABHI to also address a host of ancillary issues such as ABHI's potential waiver of its personal jurisdiction defense and its lack of diligence in asserting it.  (*Id.*).

Nevertheless, ABHI argues it is inadmissible "rank speculation" to consider these lost opportunities.  (ABHI Opp. at 29).  This misapplies the law on actual prejudice.  Speculation is where an insurer broadly asserts that a better result may have been possible with prompt notice but can identify nothing in the record, such as missed litigation opportunities or ineffective

defense strategies, to support its assertion.  *See, e.g., Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of Md., Inc.*, No. ELH-12-2076, 2014 WL 768822, at *17 (D. Md. Feb. 21, 2014) (finding insurer failed to show actual prejudice where it merely posited it might have achieved a better result).  In stark contrast, St. Paul points to specific lost opportunities to timely advance meritorious defenses in the normal course of the underlying litigation.  St. Paul does not need to "prove" that these motions necessarily would have succeeded because it was ABHI's inaction that precluded St. Paul from obtaining a ruling on such meritorious motions.  *See, e.g., LGIT*, 879 A.2d at 100 ("The [insured], however, put the [insurer] in the position of proving a negative and speculating about what could have been.  The [insurer] need not speculate."); *Minnesota Lawyers*, 531 F. App'x at 320 (finding actual prejudice where the insured's late notice cost the insurer a "real mitigation opportunity").  The loss of genuine opportunities is enough, and ABHI – the party whose inaction and late notice caused their loss – appropriately bears the consequence of having to speculate how a court might have ruled if these opportunities were taken.

ABHI similarly errs in dismissing the possibility of Cueto's voluntarily dismissal of the claims against ABHI as mere speculation.  Again, there is an undisputed factual basis supporting the potential for a voluntary dismissal: (1) ABHI possessed at least two meritorious defenses to the Cueto Action; and (2) Cueto had a track record of voluntarily dismissing defendants who possessed meritorious defenses so that he could focus his efforts on viable targets.  (Ex. 42, Decl. of T. Richards, Ex. A ("Richards Report") at 7, 10).  Accordingly, a voluntary dismissal was an objectively likely lost opportunity and not simply "speculation."  (ABHI Opp. at 28).  ABHI's

inaction extinguished this opportunity, and St. Paul need not prove the opportunity would have been successful, as ABHI's inaction caused the loss of these opportunities.

More important, ABHI does not even attempt to rebut all of the adverse consequences and lost opportunities identified in St. Paul's opening brief.   ABHI does not dispute that its inaction resulted in the entry of the Default Judgments, which led to Cueto's dismissal of the remaining defendants to focus his efforts on ABHI and turned a frivolous lawsuit into "bet-the-company" litigation for which ABHI felt compelled to retain several large firms charging the highest rates.   (Ex. 8, Voluntary Dismissal; Ex. 16, Bolog Dep. 191:7-12; Ex. 42, Richards Report at 7-8).   The entry of $98.5 million plus in default judgments alone is enough to show actual prejudice.   *See Washington v. Fed. Kemper Ins. Co.*, 482 A.2d 503, 507 (Md. Ct. Spec. App. 1984) (finding actual prejudice where insurer received notice after entry of adverse judgment – "where the insurer has been deprived of all opportunity to defend, the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer"), *abrogated on other grounds, Sherwood Brands, Inc. v. Hartford Acc. & Indem. Co.*, 698 A.2d 1078 (Md. 1997).[9]

ABHI also does not dispute that it lost the opportunity to present its defense at trial with other defendants.   (Ex. 42, Richards Report at 6).   At trial, ABHI would have stood an excellent

---

[9] Indeed, the unusual facts and outcome of *Woodfin Equities Corp. v. Harford Mutual Insurance Co.*, 678 A.2d 116 (Md. Ct. Spec. App. 1996), *rev'd in part on other grounds,* 687 A.2d 652 (Md. 1997), show how clear actual prejudice is once a default judgment has been entered.   In *Woodfin* the court found a default judgment did not constitute actual prejudice because the plaintiff had "*offered to vacate the default judgment*," "resetting" the litigation and allowing the case to proceed without any adverse consequences to the insurer.   *Id.* at 122 (emphasis added). By contrast, Cueto did not offer to vacate his Default Judgments but instead fought tooth and nail to sustain and enforce them.   Thus, the Default Judgments in the Cueto Action caused actual prejudice.

chance of prevailing because it was not involved in the underlying transaction and trial testimony of its representatives and those of the other defendants would have confirmed this.  (*Id.*)  Finally, ABHI does not dispute that its inaction led to the filing of four enforcement actions in numerous jurisdictions, each a new lawsuit that ABHI was forced to litigate due solely to the entry of the default judgments.  (*Id.* at 8).

Any of these adverse consequences and lost opportunities on its own would qualify as actual prejudice.  Together, they constitute undisputed evidence that ABHI's inaction was prejudicial as a matter of law, turning what could and should have been a relatively quick and inexpensive dismissal of the Cueto Action into a $1.5 million plus disaster that entitles St. Paul to summary judgment.[10]

### E.    ABHI's Waiver And Estoppel Claims Fail As A Matter Of Law

Recognizing its inability to win on coverage, ABHI doubles down on the very waiver and estoppel arguments that the Court has already expressed significant doubts about.  (Ex. 30,

---

[10] ABHI argues that Timothy Richard's expert report is not properly before the Court.  (ABHI Opp. at 27-28).  St. Paul cures any perceived deficiencies by resubmitting a copy of Richards' report attached to an affirming declaration from him.  (Ex. 42, Decl. of T. Richards); *see Microbix Biosystems, Inc. v. Biowhittaker, Inc.*, 172 F. Supp. 2d 665, 675 n.20 (D. Md. 2000) (allowing party to "cure any inadmissibility by submitting [a] declaration" from its expert in connection with its reply brief); *Smithfield Business Park, LLC v. SLR Int'l Corp.*, No. 5:12-cv-282-F, 2014 WL 3738217, at *12 (E.D.N.C. Jul. 29, 2014) ("[T]he court has broad discretion to permit supplementation of the summary judgment record, including curative affidavits.").  Furthermore, the Richard's report merely confirms the existence of the opportunities established above and shares how, based on his substantial local experience, these opportunities probably would have played out in St. Clair County, Illinois.

Sept. 2, 2009 Hr. Tr. 65:2-10).   ABHI fails to address many of the arguments set forth in St.

Paul's opening brief and cannot overcome those arguments it does address.[11]

### 1.    ABHI's Waiver and Estoppel Claims Remain Factually Unsupported

ABHI argues that the "central disputed fact" it is able to advance is "Bolog's testimony

that [St. Paul claims counsel] Chris Nelson stated in their February 27, 2009 phone call that

St. Paul would provide coverage for the Cueto Claim."  (ABHI Opp. at 36).  The testimony at

issue concerns an alleged question or questions by Bolog to the effect of "if we were covered for

this" or "is this covered, is this a covered claim" and alleged response(s) by Nelson to the effect

of "yes" or "it is." (Ex. 16, Bolog Dep. 101:15-16; 134:8-10).

As St. Paul's opening brief noted, ABHI is attempting to read volumes into this purported

alleged exchange, which supposedly took place less than 48 hours after St. Paul first received

notice and during Nelson's first substantive conversation with ABHI about a lawsuit involving

massive default judgments and notice seven months after the claim was made.   ABHI asserts that

it understood from this alleged brief exchange that St. Paul had irrevocably committed to provide

absolute coverage.   (*Id.*).   This interpretation of Bolog and Nelson's brief exchange is patently

unreasonable.

More importantly, ABHI's focus on its *own* understanding of the exchange is misplaced.

"Waiver is 'the *intentional* relinquishment of a known right, or such conduct as warrants an

---

[11]  As set forth in greater detail below, ABHI makes no attempt to: (1) reconcile the glaring inconsistencies between ABHI's actions and its purported belief that St. Paul had promised absolute coverage; (2) explain St. Paul's undisputed continued steps to reserve it rights despite its purported promise of absolute coverage; (3) identify any decision, let alone a factually similar decision, finding the short period of time at issue here supports a finding of waiver or estoppel; and (4) address St. Paul's analysis showing the impossibility of finding any detrimental reliance here. *Infra* 21-24.

inference of the relinquishment of such right.'" *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 576 (D. Md. 2002) (emphasis added) (quotation omitted).   This means the inquiry is whether Nelson subjectively intended to waive all of St. Paul's rights, and not what ABHI believed.

Both the record and Nelson's own testimony establish Nelson did not intend to relinquish any of St. Paul's rights, let alone all of them:

- During his deposition Nelson testified that he had "absolutely not" promised absolute coverage of the Cueto Action;

- On February 26, 2009, St. Paul sent ABHI an acknowledgement letter reserving "the right to raise any and all coverage issues and to assert appropriate coverage defenses that may apply";[12]

- Nelson took more than a page of contemporaneous notes during the call that do not reference any promise of unequivocal, absolute coverage – notes Bolog agreed were a "reasonable recitation of what I recall the discussion being";

- Nelson never told ABHI's insurance broker that he had promised absolute coverage, but instead said he was working on his coverage position;

- After the February 27, 2009 call Nelson continued to investigate the claim and drafted coverage letters reserving *all* of St. Paul's rights to deny coverage, including specifically the right to deny coverage based on late notice; and

- When Nelson handed over the Cueto Action claim file to Mark Gwin, he did not inform Gwin of any promises of absolute coverage.

(Ex. 19, Feb. 26, 2009 Ltr.; Ex. 20, Nelson Dep. 94:20-95:5; ABHI Opp. Ex. 10, Mar. 16, 2009 Draft Coverage Ltr.; Ex. 43, Mar. 13, 2009 Email; Ex. 38, Claim Notes; Ex. 16, Bolog Dep. 137:22-138:2).   ABHI's argument thus fails because the evidence shows Nelson did not intentionally waive all of St. Paul's rights.   Indeed, when recently faced with a similar alleged

---

[12] St. Paul sent the letter to the ABHI address that it had on file, but ABHI had moved some time prior and never provided St. Paul with its new address.

promise of coverage, the Fourth Circuit found an insurer's purported representation "'that [the insurer] would pay the claim,' without reserving rights" did not even raise a genuine issue of material fact, let alone establish an "intentional relinquishment of its right to invoke policy provisions." *See Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 107 (4th Cir. 2013).

Moreover, Nelson could not have waived St. Paul's rights on February 27 because his investigation was still at its inception. "The right or advantage waived must be known; '[t]he general rule is that there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to take effectual action for the enforcement of such rights.'" *Taylor v. Mandel*, 935 A.2d 671, 687 (Md. 2007) (quotation omitted). Nelson had received the Cueto Action Claim the day prior and did not know enough about it to intentionally waive all of St. Paul's rights on February 27, 2009.

Even if ABHI's understanding mattered, ABHI makes no attempt to dispute or explain its failure to act consistent with its alleged belief. Among other telling facts:

- ABHI and Bolog did not note anywhere in writing or confirm with St. Paul in writing the alleged promise of absolute coverage or inform anyone at ABHI in writing of this remarkable promise; and

- ABHI never informed its insurance broker about the alleged promise of coverage, instead leaving the broker to repeatedly reach out to St. Paul about when St. Paul's coverage determination would be issued.

(Ex. 6, Bolog Dep. 103:14-18; Ex. 37, at SL0055). ABHI's own actions completely contradict the expansive interpretation advanced by ABHI. Accordingly, Bolog's testimony of how he interpreted the exchange is, at best, a mere "'scintilla of evidence in support of [ABHI's]

position'" that "is insufficient to defeat a motion for summary judgment." *Minnesota Lawyers*, 852 F. Supp. 2d at 654 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).[13]

ABHI makes a final attempt to save its estoppel and waiver defenses by emphasizing that Nelson allegedly told Bolog not to pursue settlement talks with Cueto but to vigorously defend. (ABHI Opp. at 38-39). But these separate alleged exchanges regarding vigorous defense and settlement talks occurred in mid-March 2009 and are irrelevant to whether Nelson promised ABHI absolute coverage. Further, ABHI had already decided to vigorously defend before even speaking with Nelson by hiring multiple law firms and spending hundreds of thousands of dollars filing a petition to void and vacate. (Ex. 18, Petition to Void and Vacate). Finally, the very testimony cited by ABHI contradicts ABHI's assertion that Nelson ordered ABHI not to pursue settlement but instead to defend. Bolog testified that Nelson "said to me, you know, you can't settle without my consent or St. Paul's consent . . . ." (ABHI Opp. at 39). This is simply a reminder that the Policy requires ABHI to obtain St. Paul's consent before settling. (Ex. 1, Policy, GTC&L, Defense and Settlement).

### 2.    ABHI's Waiver and Estoppel Claims Are Legally Deficient

ABHI also fails to establish any legal basis for applying waiver or estoppel here. Crucially, ABHI identifies no decisions, let alone a factually similar decision, finding that such a brief period of time – a month and a half – supports a finding of waiver and estoppel. (St. Paul

---

[13] ABHI attempts to rehabilitate Cassandra Wallace's lack of memory by accusing St. Paul of using a "selectively incomplete citation" from her testimony. (ABHI Opp. at 37). Yet ABHI itself ignores the three questions and answers from her deposition that St. Paul set forth in full in its opening brief. (St. Paul MSJ Br. at 28). In those exchanges, Wallace admits that she doesn't remember or recall whether Nelson said "there were any potential limits on coverage" and testified only that it was her recollection that Nelson "said something regarding there being coverage, but . . . c[ould]n't recall anything specific about that." (Ex. 6, Wallace Dep. 84:17-85:1).

MSJ Br. at 34-35).   Its failure to do so is especially significant given the Court's strongly

expressed doubts that such a short period of time could support waiver or estoppel.  (Ex. 30,

Sept. 2, 2009 Hr. Tr. 65:2-10).

Nor does ABHI dispute that to prevail on its estoppel claim it must show it detrimentally

relied on Nelson's alleged representation of absolute coverage.  Indeed, ABHI makes no attempt

to refute St. Paul's detailed analysis of why the undisputed facts here preclude a finding of

detrimental reliance.  (St. Paul MSJ Br. at 33-35).  The undisputed facts are:

- The alleged February 27, 2009 exchange between Bolog and Nelson did not change
  ABHI's defensive strategy because ABHI had already decided to vigorously defend,
  and had commenced doing so by filing its petition to vacate the day before this
  conversation.

- After St. Paul informed ABHI of its denial of coverage on April 15, 2009, ABHI
  simply continued with its defense strategy.

- ABHI was never able to settle the Cueto Action due to Cueto's excessive demands,
  the lowest of which was $10 million.

(Ex. 18, Petition to Void and Vacate;  Ex. 16, Bolog Dep. 171:12-16, 176:17-179:6).

Accordingly, ABHI never changed its position to its detriment because (1) ABHI never even

changed its position; and (2) ABHI never could have settled the Cueto Action for an amount

acceptable to ABHI.  Further, ABHI cannot refute that its litigation and bargaining positions on

April 15, 2009 were no worse than they had been on February 27, 2009.  (*Id.* at 35).

Instead of addressing St. Paul's detrimental reliance analysis, ABHI merely reiterates the

theory set forth in its interrogatory response:

If [ABHI] had known that St. Paul had decided to deny coverage and that St. Paul
would not reimburse ABHI for its defense costs, ABHI would have immediately
sought to negotiate a settlement with Cueto, sought early mediation or otherwise
attempted to resolve the matter at the outset, before incurring hundreds of
thousands of dollars in legal fees.

(ABHI Opp. at 39).   Yet ABHI fails to address any of the substantial holes in this theory that St. Paul has identified.   First, ABHI's theory purports to compare what ABHI actually did with what it allegedly would have done if Nelson had denied coverage on February 27, 2009, a decision St. Paul did not reach – and so could not share – until the middle of April 2009. (Ex. 23, Gwin Dep. 65:3-9).   ABHI does not assert that simply knowing St. Paul was continuing to reserve its rights would have caused ABHI to seek an immediate settlement.   In addition, ABHI has conceded that it was never able to settle the Cueto Action due to Cueto's excessive demands.     (Ex. 16, Bolog Dep. 171:12-16, 176:17-179:6).     Moreover, contrary to its interrogatory response, ABHI did *not* spend "hundreds of thousands of dollars" in defending the Cueto Action between February 28, 2009 and April 15, 2009.  Rather, it spent only $61,547.98 in that 47 day time period.  (Olson Reply Decl. ¶ 4).[14]

Finally, ABHI fails to show any basis for allowing it to create coverage through waiver or estoppel.   With respect to the Policy's late notice condition precedent, nothing in Maryland Insurance Code § 19-110 shows an intent by the Maryland's legislature to alter the traditional rule that coverage may not be created by waiver or estoppel.   And ABHI does not even assert that the duty to defend is a waivable mere "'technical' condition subsequent."  (ABHI Opp. at 41)  Instead, ABHI asserts that St. Paul has waived its right to rely on this defense by not timely asserting it.  (*Id.*).  But this begs the question of whether the duty to defend is waivable in the first place.  In any event, the Court has rejected ABHI's argument that St. Paul failed to timely assert the duty to defend issue.  (ECF No. 97, Order Granting Leave to Amend Compl. at 3).

---

[14] Notably, ABHI actually spent $245,386.22 on or before February 27, 2009, when Bolog first spoke to Nelson.   (Olson Reply Decl. ¶ 2).   Thus, ABHI had already spent "hundreds of thousands of dollars" before Bolog ever spoke to Nelson.

Thus, ABHI's waiver and estoppel claims are both factually and legally flawed. Accordingly, St. Paul is entitled to summary judgment on ABHI's Counterclaim on these issues.

**F.    ABHI's Bad Faith Claim Fails As A Matter Of Law**

ABHI does not dispute that the Maryland Code allows an award for bad faith only where coverage exists.[15]  Because the Policy provides no coverage for the Cueto Action, St. Paul cannot be liable under Maryland's bad faith statute and it is entitled to judgment as a matter of law.

Further, ABHI provides no basis for finding bad faith even if coverage is found to exist. ABHI acknowledges that "[g]ood faith" is "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."  MD. CODE ANN., CTS. & JUD. PROC. § 3-1701(a)(4).   ABHI identifies three additional factors some courts have considered:

> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*All Class Constr., LLC v. Mut. Beneficial Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014) (citation omitted).

Consideration of these factors only confirms St. Paul's good faith as a matter of law. Significantly, courts applying these factors have found that a coverage letter providing a reasonable explanation for the denial of coverage strongly supports a finding of good faith.  *See Id.* at 418 (dismissing bad faith count where insurer's coverage letter "suffice[d] as a reasonable

---

[15]  ABHI also does not dispute that Maryland's bad faith statute does not permit the punitive damages it seeks, definitively entitling St. Paul to summary judgment on that request.  (St. Paul MSJ Br. at 37).

explanation for denial of coverage"); *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 893 F. Supp. 2d 715, 741 (D. Md. 2012) (granting summary judgment on bad faith claim where "Insurers promptly provided [the insured] with a reasoned basis for the denial of its claim"), *rev'd on other grounds*, 744 F.3d 279 (4th Cir. 2014). ABHI does not and cannot dispute that both St. Paul's April 15, 2009 coverage letter and its early pleadings in this matter provided a reasonable explanation for its denial of coverage. (Ex. 24, Apr. 15, 2009 Coverage Ltr.; ECF No. 1, Compl.).

With respect to the first additional factor, St. Paul's handling of the Claim was prompt: ABHI notified St. Paul of the Cueto Action on February 25, 2009, and, after generally reserving its rights in an initial acknowledgement letter on February 26, 2009, St. Paul provided ABHI with its coverage position on April 15, 2009, just seven weeks later. ABHI points to no decisions finding a similar seven week investigation to be unreasonably long (particularly when the insurer had to review events leading to nearly $100 million in default judgments and evaluate the legal consequences of those events). Moreover, St. Paul moved promptly to commence the instant coverage action so that the parties' coverage dispute could be expeditiously resolved. Then, *at ABHI's request*, St. Paul agreed to stay this coverage action until the Cueto Action was resolved after ABHI raised concerns that discovery in the coverage action regarding what actually occurred with ABHI's handling of process in the Cueto Action could adversely affect its efforts to vacate the Default Judgments.

The second additional factor, "the substance of the coverage dispute or the weight of legal authority on the coverage issue," also precludes a finding of bad faith. At the time of St. Paul's April 2009 coverage decision, the Fourth Circuit and Maryland Federal district courts

- 27 -

had held that § 19-110 did not apply to claims-made and reported policies like the Policy at issue here.  *E.g., Janzer Enters., Inc. v. Executive Risk Indem., Inc.*, 97 F. App'x 410, 411 (4th Cir. 2004) (finding no need to show actual prejudice under claims-made and reported policies); *see also All Class Constr.*, 3 F. Supp. 3d at 416 ("the determination as to good faith focuses on the time at which the insurer's decision was made").  Moreover, St. Paul's April 15, 2009 coverage letter explicitly stated that ABHI's inaction had prejudiced St. Paul.  (Ex. 24, April 15, 2009 Coverage Ltr.).  Accordingly, the overwhelming weight of legal authority supported St. Paul's declination of coverage.

On the third factor, St. Paul's "diligence and thoroughness in investigating the facts specifically pertinent to coverage," St. Paul's extensive investigation is beyond dispute. St. Paul's claims counsel reviewed pleadings that exceeded 150 pages.  (Olson Reply Decl. ¶ 9). They communicated multiple times with ABHI representatives, and the initial call alone lasted nearly an hour and generated more than a page of single-spaced notes.  (Ex. 38, Claim Notes; ABHI Opp. Ex. 6, Bolog Dep. 98:7-10).  They searched for information about Cueto on the Internet.  (Ex. 44, Gwin Dep. 72:1-72:3).  And they conducted legal research that allowed them to focus in on the key factual and legal issues.  (Ex. 23, Gwin Dep. 61:17-24).  Indeed, ABHI does not identify anything else it believes St. Paul should have done to investigate its Claim.

Recognizing that all three factors cut against it, most of ABHI's bad faith analysis simply attempts to muddy the waters by raising extraneous purported "evidence" of bad faith.  ABHI asserts that "St. Paul gave no consideration to the extreme adverse consequences a denial of coverage could cause for ABHI, including the trouble that the denial could cause ABHI with its banking regulators."  (ABHI Opp. at 46).  This is irrelevant to the statutory bad faith analysis.

Indeed, an insured could never deny coverage if the "adverse consequences" of a denial were relevant because there would be significant adverse consequences almost every time coverage is denied.

Next, ABHI bizarrely claims that the Policy requires St. Paul to advance defense costs, even when St. Paul has determined that the Claim is not covered: "St. Paul also ignored its clear obligation to advance ABHI's Cueto Claim Defense Costs pending final resolution of the coverage issues by this Court as required by the Policy's advancement of costs provision . . . ." (ABHI Opp. at 46).  This argument is absurd and has nothing to do with the bad faith factors.  If St. Paul determines a Claim is not covered because ABHI has breached its obligations under the Policy with respect to that Claim, nothing in the Policy requires St. Paul to advance Defense Costs until the conclusion of a coverage action.  Courts have consistently found that similar advancement provisions do not impose an obligation to advance defense costs for claims the insurers believe not to be covered.  *See, e.g., Brown v. Am. Int'l Grp., Inc.*, 339 F. Supp. 2d 336, 346 (D. Mass. 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 936 (S.D. Tex. 2003); *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268, 275 (D. Del. 1997).

ABHI also discusses at length St. Paul's alleged "disparate treatment [of] ABHI as compared to at least one other insured."  (ABHI Opp. at 47).  ABHI asserts that St. Paul's treatment of a 2010 late notice claim (the "West Virginia Claim") – involving a different insured, different facts, and different state law – shows that "St. Paul placed its own financial interests above those of ABHI" in this matter.  (*Id.* at 49).  There are multiple flaws with ABHI's theory. As an initial matter, St. Paul's handling of other claims is irrelevant under the bad faith statute.

MD. CODE ANN., CTS. & JUD. PROC. § 3-1701(a)(4).  The inquiry is whether St. Paul's decision *here* was "an informed judgment based on honesty and diligence" and "supported by the evidence" known at the time the decision was made.  *Id.*  For these same reasons, St. Paul's alleged "place[ment] of its own financial interests above those of ABHI" is also irrelevant.  The bad faith statute does not care about the parties' respective "financial interests" – it asks whether the claim was handled promptly, thoroughly, and in accordance with applicable legal authority. *Id.*; *All Class Constr.* 3 F. Supp. 3d at 416 (additional bad faith factors focus on promptness, thoroughness, and correctness of coverage decision).  Finally, the two claims are readily distinguishable.  Among other differences, West Virginia law appeared to require a showing of prejudice, yet there was no prejudice in the West Virginia Claim because the insured there had *actively defended* the lawsuits against it since their inception.  (ABHI Opp. Ex. 17, Nelson Oct. 21, 2014 Dep. 53:8-10).  ABHI does not dispute its failure to do so here.[16]

ABHI concludes by asking the Court to rely upon its bad faith expert's report.  (ABHI Opp. at 49).  That report is based on the facts previously discussed in St. Paul's brief and, for the same reasons, fails to establish that St. Paul's actions come anywhere close to bad faith. Accordingly, there is no need to swamp the Court with yet more paper by submitting a rebuttal report from St. Paul's bad faith expert.  The record is already clear that St. Paul's declination of coverage was "an informed judgment based on honesty and diligence supported by the evidence

---

[16] ABHI asserts that "St. Paul was willing to overlook [in the West Virginia Claim] grossly untimely notice from a policyholder *where the result would not cost St. Paul any dollars,*" as if the costs imposed on an insurer by late notice should be irrelevant.  (ABHI Opp. at 48-49) (emphasis added).  To the contrary, the presence or absence of costs to the insurer is central to the actual prejudice inquiry.

[St. Paul] knew or should have known at the time [St. Paul] made a decision on a claim." MD.

CODE ANN., CTS. & JUD. PROC. § 3-1701(a)(4).

III.  **CONCLUSION**

For the foregoing reasons, St. Paul's Motion for Summary Judgment should be granted

and ABHI's Cross-motion for Summary Judgment denied.

Respectfully submitted,


/s/ Thomas J. Judge
Thomas J. Judge (Bar No. 12818)
Brent H. Olson (*Pro hac vice*)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, NW, Suite 450
Washington, DC 20036
Tel:    (202) 778-4060
Fax:    (202) 778-4099
tjudge@ljwllp.com
bolson@ljwllp.com

Counsel for Plaintiff/Counter-Defendant
St. Paul Mercury Insurance Company

Dated: December 30, 2014

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 30th day of December, 2014, I caused a copy of the foregoing and its accompanying documents to be electronically served upon the following individuals:

Albert J. Mezzanotte, Jr., Esq.
Dwight W. Stone, II, Esq.
WHITEFORD, TAYLOR & PRESTON, LLP
7 St. Paul Street
Baltimore, MD 21202-1626
amezzanotte@wtplaw.com
dstone@wtplaw.com

/s/ Thomas J. Judge
Thomas J. Judge